Joe RONEY, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–88–731.

Court of Criminal Appeals of Oklahoma.

Oct. 23, 1991.

Gloyd L. McCoy, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Diane L. Slayton, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

LANE, Presiding Judge:

Appellant, Joe Roney, was convicted of Second Degree Burglary, After Former Conviction of a Felony (21 O.S.1981, § 1435) after a trial by jury in the District Court of Craig County, Case No. CRF–87–107. Following a two stage proceeding, Appellant was sentenced to serve a term of twenty (20) years in the custody of the Oklahoma Department of Corrections. He has appealed his conviction alleging that the evidence against him was obtained as the result of an illegal search and seizure and that the State failed to prove his prior felony convictions. We disagree with these contentions and affirm the conviction.

Immediately prior to his arrest, Appellant was a passenger in a car being driven on south bound Highway 59 in MacDonald County, Missouri. Sheriff Lou Keeling testified that he first noticed the car because it was being driven at an abnormally slow rate of speed on the highway. The officer told the jury that he intended to pull the car over because it was impossible to read the Oklahoma license plate on the car because it was covered with road debris. Before the officer was able to attempt the traffic stop, the driver of the car, Joe Helms, pulled into the parking lot of a store. The Sheriff followed.

In the parking lot, the Sheriff spoke to Helms. Another officer got out of his car and walked to the back of the suspect's car to get the tag number. As he passed by the side of the car, he could see two guns in the back seat of the car. After removing the guns, he also observed a jewelry box and a video cassette recorder in the front seat of the car. After the Sheriff obtained permission from Helms, he searched the trunk and found it to be full of cameras, radios and televisions, among other things.

The officers detained the driver of the car and the passengers while they made several calls with regard to a name found on some of the property. After determining that many of the items had been stolen during a recent burglary in Vinita, Oklahoma, Appellant was arrested.

As his first allegation of error, Appellant claims that the evidence admitted against him was the product of an illegal search and seizure. He asserts that the officers did not have probable cause to stop the vehicle in which he was a passenger, thus, there was no justification for the subsequent search. We find that the facts of the case do not support Appellant's application of search and seizure principles.

Appellant's argument is based on whether or not police officers have a right to stop a car traveling on a public roadway for no reason other than to check a dirty license tag. This analysis is irrelevant in the present case because the officers did not stop the car on the highway, but instead followed it into a parking lot. Once the car was parked, the guns inside the car, which lead to the further inquiry by the officers, were clearly visible from outside the car. Accordingly, it is our conclusion that the officers observance of the guns in the car resulted not through an illegal stop, but was occasioned by a legitimate application of the plain view doctrine.

The plain view exclusion to the Fourth Amendment exclusionary rule has previously been defined by this Court as establishing three criteria which must be met for this exception to apply:

(1) the initial intrusion which afforded the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the object was immediately apparent.

*Abbott v. State,* 565 P.2d 691, 693 (Okl.Cr. 1977). The *Abbott* decision relies in large part on *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), as the foundation for the rules promulgated in relation to the plain view doctrine. Because the United States Supreme Court recently had occasion to reexamine the doctrine set out in *Coolidge* in *Horton v. California,* —— U.S. ——, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), we believe that our criteria should be reexamined in light of that opinion.

In *Horton* the Supreme Court noted that the second factor identified above, that of

inadvertent discovery, had never been agreed upon by a majority of the Court. In its reconsideration of the plain view doctrine, the Court concluded that inadvertent discovery of the evidence was no longer to be considered a limitation on the application of the exception. The Court held that the plain view exception was sufficiently limited in its employment by the other two qualifiers, that the object be in plain view and that its relation to criminal activity be immediately apparent, along with the prohibition against general warrants so as to provide ample protection under the Fourth Amendment. Accordingly, the second element listed in the *Abbott* opinion is no longer a necessary element in the application of the plain view doctrine. To that extent, *Abbott* is overruled.

In the present case, we find that the initial intrusion which afforded the plain view was lawful in that the officers had every right to be in the parking lot. Also, the incriminating nature of the guns as observed by the officer as he passed the car, was immediately apparent. *Grigsby v. State*, 496 P.2d 1188, 1192 (Okl.Cr.1972); *Turci v. State*, 482 P.2d 611, 613 (Okl.Cr. 1971). The trial court properly admitted the evidence seized as a result of the officer's observations.[1] No error has been identified.

In his second allegation of error, Appellant claims that the State did not introduce sufficient evidence of a prior conviction to justify enhancement of Appellant's sentence under 21 O.S.1981, § 51. Again, we disagree. Although the trial was conducted as a two stage proceeding, Appellant took the stand in the first stage and admitted that he had plead guilty to a felony in Missouri. The State offered the Information and the Docket Sheet from the Missouri conviction in the second stage. We held in *Rosteck v. State*, 749 P.2d 556, 558 (Okl.Cr.1988), that "when the State makes a prima facia showing of prior convictions, the defendant has the burden of

showing the defects in that judgment and sentence." In this case, Appellant has failed to allege that there was any defect in the prior proceedings against him. His claim that the State's proof was insufficient is based on his allegation that he received a "deferred" sentence. This conclusion is based on a notation contained in the Docket Sheet that stated: "Allocution granted. Imposition of sentence is suspended for five years." Before we could construe this notation as a deferred sentence we would have to ignore the sentence immediately prior to the quoted language which says, "Court finds the defendant guilty of Class B felony of Sodomy." The finding of guilt removes the sentence from the deferred sentence category. *See* 22 O.S.1981, § 991c. There is nothing on the face of any of the documents which would lead to the conclusion that the convictions were wrongfully obtained. Insofar as Appellant has failed to show that the prior convictions are invalid in any way, we must reject this proposition of error. *Staten v. State*, 738 P.2d 565, 567 (Okl.Cr.1987).

After review of the errors alleged by Appellant, we are unable to conclude that any error has occurred which requires either reversal or modification of Appellant's sentence. Accordingly, the judgment and sentence is AFFIRMED.

LUMPKIN, V.P.J., and BRETT, PARKS and JOHNSON, JJ., concur.

---

1. Based on our resolution of this issue, we need not consider whether Appellant was denied the effective assistance of counsel when his attorney failed to challenge the admission of the evidence at trial. The motion would have been denied, thus the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) would not have been met.